# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER GUARIGLIA,** | : | **Civil No. 1:21-CV-920** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI**, | : | |
| **Acting Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

On May 1, 2019, Christopher Guariglia applied for supplemental security income benefits, alleging that he was disabled due to the combined effects of shoulder impingements, osteoarthritis, cervical and lumbar back disease, carpal tunnel syndrome, neuropathy, and diabetes. (Tr. 57, 59). With respect to these conditions, the clinical record documenting Guariglia's treatment, while equivocal, contained numerous unremarkable entries, coupled with test results which generally documented mild to moderate impairments. This equivocal treatment history, in turn, inspired four very different medical opinions, two of which found that Guariglia could perform some degree of light work. Presented with this clinical record, and this diversity of opinion evidence, the Administrative Law Judge (ALJ)

1

assigned to this case found that Guariglia could perform a range of light work, concluded that Guariglia was not disabled during the relevant period, and denied his application for benefits. Guariglia now appeals this decision, arguing that the ALJ's decision was not supported by substantial evidence. In particular, Guariglia contends that the ALJ erred in the evaluation of a medical consultant who examined the plaintiff on one occasion.

In considering this decision, we have been instructed by the Supreme Court that we exercise a limited scope of substantive review when considering Social Security appeals. Our task is to determine whether substantial evidence supports the ALJ's decision, and we are enjoined that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In this case, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's disability determination. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.    **Statement of Facts and of the Case**

On May 1, 2019, Christopher Guariglia applied for supplemental security income benefits, alleging that he was disabled on May 1, 2019, due to the combined effects of shoulder impingements, osteoarthritis, cervical and lumbar back disease, carpal tunnel syndrome, neuropathy, and diabetes. (Tr. 57, 59). Guariglia was born in 1970 and was in his late 40's at the time of the alleged onset of his disability. (Tr. 139). He had a 9th grade education, (Tr. 83), and was found to have had no prior relevant work. (Tr. 65). This was Guariglia's second Social Security application; a prior application having been denied in 2005.

With respect to Guariglia's physical impairments, the medical record confirmed that the plaintiff experienced some degree of impairment due to his diabetes, degenerative disc disease, osteoarthritis, carpal tunnel syndrome, and should problems. However, these treatment records were very mixed in terms of the

3

severity of these conditions, and substantial treatment records described Guariglia's impairments in terms that were not wholly disabling.

During the relevant time period following May 2019, Dr. Emma Rubin was Guariglia's primary care physician. Dr. Rubin's treatment records consistently documented that Guariglia displayed good bilateral strength in his extremities, had a normal gait for his age, and displayed to motor deficits. Thus, on May 14, 2019, Dr. Rubin reported that Guariglia "[w]alks with a normal gait for age," and indicated that his "Upper Extremities: motor strength is 5/5 bilaterally. Lower Extremities: motor strength is 5/5 bilaterally." (Tr. 342). Two months later, on July 16, 2019, Dr. Rubin made similar clinical findings regarding Guariglia's gait and motor strength. (Tr. 630). Dr. Rubin echoed these findings during a September 24, 2019, examination of Guariglia. (Tr. 626). Further, during a January 21, 2020, clinical encounter Dr. Rubin noted that that Guariglia "[w]alks with a normal gait for age," and found his motor strength to be 5/5 bilaterally. (Tr. 622).

These clinical findings, in turn, were consistent with the extended longitudinal treatment history for Guariglia. Between May 2017 and May 2019, Dr. Rubin had numerous clinical encounters with Guariglia. During these treatment sessions, the doctor consistently documented Guariglia's normal gait and bilateral

strength. (Tr. 343-44, 347-48, 350-51, 352-54, 356-57, 360, 363, 366, 369, 372, 375, 378).

Dr. Rubin was not alone in making these sort of relatively benign and unremarkable clinical findings. Thus, on January 22, 2019, Guariglia was seen by Dr. Kelly Williams at Northeastern Rehabilitation Associates. At that time, Dr. Williams found that, despite his complaints of pain, Guariglia's cervical range of motion was normal, and his shoulder range of motion was only mildly limited. According to Dr. Williams, Guariglia ambulated normally. (Tr. 317). A February 8, 2019, evaluation conducted at Northeastern Rehabilitation Associates confirmed that Guariglia had a non-antalgic gait and normal posture. (Tr. 331). On March 25, 2019, another treating source at Northeastern Rehabilitation Associates, CRNP Alyssa Digwood, reported that Guariglia's cervical range of motions was mildly restricted, and his lumbar range of motion was restricted, but also indicated that Guariglia reported his pain at only 2/10 and stated that his condition had improved by 50%. (Tr. 334). Guariglia's bilateral lower extremity strength was rated at 5/5, his reflexes were symmetric, and his sensation was intact throughout. (Tr. 335).

Dr. Williams continued to describe Guariglia's impairments in a non-disabling fashion during the Fall and Winter of 2019. Thus, on September 16, 2019, Dr. Williams reported that Guariglia displayed 75% of a normal range of motion in

his cervical spine, and MRI results generally showed only mild to moderate abnormalities. (Tr. 634). On November 16, 2019, Dr. Williams reviewed these MRI results again with Guariglia, noting that the degree of self-reported pain described by the plaintiff was not entirely congruent with the mild abnormalities observed in the MRIs. (Tr. 645-46). By January 20, 2020, Dr. Williams indicated that Guariglia reported improvement in his symptoms, denied significant back pain, and stated that he encountered some throbbing in his back only when he engaged in increased activity or running. (Tr. 659). Likewise, on March 23, 2020, Dr. Julio Ramos examined Guariglia and found that he retained a full range of motion while experiencing some spinal tenderness. (Tr. 684).

Medical testing undertaken during this time frame also confirmed no more than mild to moderate structural changes in Guariglia's spine. Thus, a February 7, 2019, ultrasound examination disclosed only mild to moderate tendonitis and arthritic changes in Guariglia's shoulders. At that time Guariglia "was reassured that no sever pathology was seen." (Tr. 327). An August 6, 2019, MRI examination for the most part revealed only mild disc bulging in the lumbar spine. (Tr. 540-46).

There was a single significant outlier in this otherwise consistent clinical history.  On September 20, 2019, Guariglia underwent a consultative examination with Dr. Marielle Stone as part of the disability assessment process. (Tr. 592-606).

6

At this time, Guariglia displayed an antalgic gait, reported a severely limited range of motion, and described near constant pain at an intensity of 7 or 8/10. (Id.) He also described an extremely limited ability to sit, stand, and walk during a workday. (Tr. 598). This clinical report stood in stark contrast to the treating source statements provided by Drs. Rubin and Williams in September of 2019. Those clinical records showed that Guariglia displayed a normal gait and 5/5 bilateral strength, (Tr. 626), as well as indicating that Guariglia displayed 75% of a normal range of motion in his cervical spine, and his MRI results generally showed only mild to moderate abnormalities. (Tr. 634).

These contrasting clinical reports, in turn, contributed to disparate medical opinions by the medical sources who examined Guariglia's case. At the outset, on June 28, 2019, a state agency expert, Dr. Antone Raymundo, opined based upon a medical record review that Guariglia could perform a limited range of light work. (Tr. 124-37). A second state agency expert review undertaken by Dr. Gene Whang on October 21, 2019, reached similar conclusions based upon a review of the entire medical record. (Tr. 140-51). In contrast, Dr. Stone's medical opinion, which largely relied upon the results of her one-time examination of the plaintiff, indicated that Guariglia was far more restricted in his ability to work, particularly as it related to postural changes in the workplace. (Tr. 592-606). Finally, Dr. Rubin, Guariglia's

treating physician, submitted a summary medical opinion on May 14, 2019, which opined that the plaintiff was severely impaired. (Tr. 451-52). This opinion was difficult to reconcile with the doctor's contemporaneous treatment notes for May 14, 2019, which reported that Guariglia "[w]alks with a normal gait for age," and indicated that his "Upper Extremities: motor strength is 5/5 bilaterally. Lower Extremities: motor strength is 5/5 bilaterally." (Tr. 342).

It was against the backdrop of this contrasting evidence, much of which indicated that Guariglia retained the ability to do some work, that an ALJ conducted a disability hearing in Guariglia's case on May 12, 2020. (Tr. 75-123). Guariglia and a Vocational Expert both appeared and testified at this hearing. (Id.) In the course of his testimony, Guariglia described the severity of his symptoms in extreme terms. (Tr. 83-102). According to Guariglia, he suffered shoulder and back pain which he rated at 7/10. (Tr. 86). This pain made it difficult for him to walk more than two to three blocks and limited him to sitting or standing for no more than fifteen minutes at a time. (Tr. 88-91). Moreover, Guariglia stated that he would require up to one half hour to recover after briefly sitting, standing, or walking. (Id.)

Following this hearing, on May 22, 2020, the ALJ entered a decision denying Guariglia's application for supplemental security insurance benefits. (Tr. 54-71). In this decision, the ALJ first concluded that Guariglia had not engaged in any

substantial gainful activity since May 1, 2019, the date of his application. (Tr. 59).

At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found

that Guariglia had the following severe impairments: bilateral shoulder osteoarthritis

and tendinosis, lumbar and cervical spondylosis and degenerative disc disease,

bilateral carpal tunnel syndrome, and polyneuropathy with diabetes mellitus. (Id.)

At Step 3, the ALJ determined that Guariglia did not have an impairment or

combination of impairments that meets or medically equals the severity of one of

the listed impairments. (Tr. 60).

Between Steps 3 and 4, the ALJ fashioned this following residual functional

capacity ("RFC"), assessment for Guariglia:

> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 416.967(b) except he is limited to frequent
> bilateral overhead reaching, frequent bilateral fingering and frequent
> bilateral feeling with his upper extremities. The claimant can frequently
> balance and kneel; he can occasionally stoop, crouch, crawl and climb
> ramps and stairs but never climb ladders, ropes, or scaffolds.
> Additionally, the claimant can have frequent exposure to unprotected
> heights, moving mechanical parts, extreme cold and vibration.

(Tr. 61).

In making the RFC determination, the ALJ considered the medical evidence,

medical opinions, and Guariglia's testimony regarding his impairments. On this

score, the ALJ detailed Guariglia's generally unremarkable clinical history, and is

test results which did not disclose severe organic impairments. (Tr. 61-63). The ALJ contrasted these multiple medical findings over time, with the single severely restrictive assessment made by Dr. Stone in September of 2019. (Tr. 63-64). Ultimately the ALJ found that the greater weight of the clinical evidence supported the view that Guariglia retained to capacity to work. (Id.)

The ALJ's evaluation also took into account the medical opinion evidence. (Tr. 64-65). On this score, the ALJ found that the opinions of the two state agency experts to be generally persuasive in that they were generally consistent with the medical evidence of record. (Tr. 64). The ALJ largely discounted Dr. Rubin's highly restrictive opinion "as it is not supported by a detailed explanation and is not consistent with Dr. Rubin's own treatment records moving forward, which noted normal gait, normal strength in all extremities with no focal deficits and no clubbing cyanosis or edema in any extremity." (Tr. 65). Guariglia does not directly challenge this determination on appeal. As for the opinion of Dr. Stone, the consulting examining physician, the ALJ concluded that:

> [T]his opinion [is] somewhat persuasive. It is persuasive to the extent that the lifting and carrying limitations are supported by the consultative examination and the treatment records, detailing the claimant's normal strength but decreased sensation and shoulder pain. However, the remainder of the limitations are an overestimation of the claimant's limitations and are not consistent with the claimant's treatment records discussed above which show that while at times the

claimant has tenderness and reduced range of motion, he consistently has normal motor strength in all extremities and a normal gait.

(Tr. 64).

Having arrived at this RFC assessment, the ALJ found at Step 5 that Guariglia could perform work available in the national economy such as a clerk, router, or shipping and receiving weigher. (Tr. 66). Accordingly, the ALJ concluded that Guariglia did not meet the stringent standard for disability set by the Act and denied this claim. (Tr. 67).

This appeal followed. (Doc. 1). On appeal, Guariglia contends that the ALJ erred in failing to properly and fully evaluate the medical opinion of Dr. Stone. (Doc. 20). This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis

deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777

F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d

Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence.

Rather our task is to simply determine whether substantial evidence supported the

ALJ's findings. However, we must also ascertain whether the ALJ's decision meets

the burden of articulation demanded by the courts to enable informed judicial

review. Simply put, "this Court requires the ALJ to set forth the reasons for his

decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

14

**B.**   <u>**Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

(quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C.    Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in September of 2019 after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However,

in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to

"supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

By way of further guidance, while these regulations eschew any hierarchical

ranking of opinions, they call upon ALJ's to evaluate medical opinions against the

following benchmarks:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

(i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

(v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

20 C.F.R. § 404.1520c.

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-

22

established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Mason</u>, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. <u>See</u> <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); <u>Turner v. Colvin</u>, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); <u>Connors v. Astrue</u>, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. <u>See e.g.</u>, <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

<u>Durden v. Colvin</u>, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Likewise, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical

opinion from a physician is misguided." <u>Cummings</u>, 129 F.Supp.3d at 214–15. Simply put, while:

> [T]he analytical paradigm that applies to evaluating medical opinions fundamentally changed in March of 2017, . . . that change does not alter the significance of medical opinion evidence to a disability analysis. Nor does that paradigm shift discount the longstanding legal principles which called for a clear articulation of the ALJ's rationale in making a disability determination.

<u>Kenyon v. Saul</u>, No. 1:20-CV-1372, 2021 WL 2015067, at *9 (M.D. Pa. May 19, 2021).

### D.   <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Guariglia was not disabled. Therefore, we will affirm this decision.

With respect to his claims regarding the treatment of opinion evidence, we first note that "[t]he ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Further, in making this assessment of medical opinion evidence, "[a]n ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion." Durden, 191 F.Supp.3d at 455. Finally, when there is no evidence of any credible medical opinion supporting a claimant's allegations of disability it is also well settled that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

In the instant case, the plaintiff argues that the ALJ should have found Dr. Stone's opinion more persuasive, and that the ALJ erred in finding the opinions of the state agency consultants persuasive.[1] However, we conclude that the ALJ

---

[1] We note that Guariglia has prudently elected not to argue that the ALJ erred in assessing the treating source, Dr, Rubin's, medical opinion. As we have noted, Dr. Rubin's May 14, 2019, medical opinion, which stated that the plaintiff was severely impaired. (Tr. 451-52), cannot be reconciled with the doctor's contemporaneous treatment notes for May 14, 2019, which reported that Guariglia "[w]alks with a normal gait for age," and indicated that his "Upper Extremities: motor strength is 5/5 bilaterally. Lower Extremities: motor strength is 5/5 bilaterally." (Tr. 342). Since discrepancies between a medical source's opinion, and the claimant's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis, the ALJ did not err in finding this opinion unpersuasive. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005)

properly discussed all of the relevant evidence in determining the persuasive power of this opinion. First, with respect to Dr. Stone's opinion, the ALJ explained that while the record supported some of Dr. Stone's limitations, the limitation regarding Guariglia's postural constraints was not consistent with longitudinal medical record, which had long documented that Guariglia displayed a normal gait and 5/5 strength in his extremities. Moreover, treatment notes reported episodes of improvement in his pain, and frequently documented less severe reports of pain than those shared during Guariglia's single interview with Dr. Stone. Further, these treatment records contained test results which revealed only mild to moderate organic changes in Guariglia's spine. Thus, the objective testing data did not support Guariglia's claimed level of impairment.

It is axiomatic that, when evaluating medical opinion evidence an ALJ typically may discount a medical opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between a medical source's opinion, and the claimant's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis.   Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). In this case, the ALJ found that Dr. Stone's highly restrictive opinion was inconsistent with treatment records and objective medical tests. This

finding, which draws support from substantial evidence in the record, undermined both the supportability and consistency of Dr. Stone's opinion. Since under the current governing regulations supportability and consistency are the keystones for persuasiveness of a medical opinion, the ALJ did not err in affording this opinion less persuasive power than the state agency expert opinions which were, on the whole, more consistent, and congruent with the clinical evidence.

We conclude that substantial evidence supports the ALJ's treatment of this medical opinion evidence. Thus, the ALJ was presented with several medical opinions. Ultimately, the ALJ discussed the weight afforded to each, citing to the objective medical evidence that supported or undermined the opinions. This is the task of the ALJ, and it is "[t]he ALJ – not treating or examining physicians or State agency consultants–[who] must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Accordingly, we find that the ALJ considered all of the medical evidence and adequately explained his reasoning for the weight given to the various medical opinions in this case to determine the range of work Guariglia could perform.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus,

notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   **Conclusion**

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: August 11, 2023